IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES R ZWICK, | : | |
| Plaintiff | : | |
| | : | CIVIL NO. 1:CV-12-1797 |
| vs. | : | |
| | : | (Judge Caldwell) |
| DEPARTMENT OF JUSTICE, *et al.*, | : | |
| Defendants | : | |

*M E M O R A N D U M*

I.   *Introduction*

James Zwick, an inmate at the Allenwood United States Penitentiary (USP Allenwood), in Allenwood, Pennsylvania, filed this *Bivens* action concerning events that occurred in 2012 while housed at USP Canaan, in Waymart, Pennsylvania.[1] Named as defendants are the following Bureau of Prisons (BOP) USP Canaan employees: Donald Altenhofen, Jr., Supervisor of Industries; Joseph Dunstone, Case Manager; David J. Ebbert, Warden; Jason Hunter, Senior Corrections Officer; and Michael Sample, Unit Manager.

In his Complaint Zwick alleges that he was unfairly removed from his Federal Prison Industries job and threatened with a transfer to another facility in retaliation for filing grievances about a reduction in pay, lack of timely promotion, and delayed reinstatement to a prison industries position. (Doc. 1, Compl.)

---

[1] In *Bivens*, the Supreme Court held that a plaintiff may obtain damages for injuries caused by a federal agent acting "under color of his authority" in violation of a claimant's constitutionally protected rights. *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 389, 91 S.Ct. 1999, 2001, 29 L.Ed.2d 619 (1971). *Bivens*, is the federal counterpart to 42 U.S.C. § 1983. *See Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004).

The Defendants have filed an uncontested motion to dismiss and motion for summary judgment. (Doc. 28, Mot. to Dismiss and Mot. for Summ. J.) Defendants seek judgment on the basis of sovereign immunity; lack of personal involvement of defendants Hunter and Dunstone; and Zwick's failure to exhaust his administrative remedies as to any claim except for his February 2012 termination from UNICOR. On the latter claim, they assert it fails on the merits. Defendants filed a statement of undisputed material facts, a brief and exhibits in support of their motion. (*See* Docs. 29 and 30). Zwick has neither responded to the motion nor sought an enlargement of time to do so.

For the reasons the follow, Defendants unopposed motion to dismiss and motion for summary judgment will be granted.

II.   *Standards of Review*

　　A.   *Motion to Dismiss*

"The test in reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6) is whether, under any 'plausible' reading of the pleadings, the plaintiff would be entitled to relief." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013)(citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)(quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need

only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965).  "[L]abels and conclusions" are not enough, and a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 2944, 92 L.Ed.2d 209 (1986)).

      B.    *Motion for Summary Judgment*

We will examine the motion for summary judgment under the well-established standard.  *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 772-73 (3d Cir. 2013).  Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In making this evaluation, the court must determine "whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and whether the moving party is therefore entitled to judgment as a matter of law." *MacFarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 271 (3d Cir. 2012)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

"[T]he mere existence of some alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party.'" *Roth v. Norfalco*, 651 F.3d 367, 373 (3d Cir. 2011)(citing *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)).

"[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). The moving party has the burden of showing the absence of a genuine issue of material fact, but the nonmoving party must present affirmative evidence from which a jury might return a verdict in the nonmoving party's favor. *Liberty Lobby*, 477 U.S. at 256-57, 106 S.Ct. at 2514. Allegations made without evidentiary support may be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000).

III.   *Discussion*

    A.   *Motion to Dismiss*

        1.   *Allegations of the Complaint*

In his Complaint and exhibits attached thereto, Zwick alleges the following. On February 6, 2012, Zwick approached Donald Altenhofen, Supervisor of Industries (SOI) "to correct his pay grade that was taken [from him] in 2011." (Doc. 1, Compl., ECF p. 3).

When SOI Altenhofen told Plaintiff "go back to work," Zwick responded "I'll put in a cop-out." (*Id.*)  Zwick then went to get a cop-out, or administrative remedy form from the office.  When SOI Altenhofen saw what Zwick was doing, he asked "writing me up?" (*Id.*, ECF p. 4).  Zwick claims he was "fired from his job a few days later . . . for disobeying an order and for insolence towards staff." (*Id.*)  Zwick avers that SOI Altenhofen can only remove him from his prison industry, or UNICOR, job if he poses "a serious threat to the orderly and safe operation of federal prison industries." (*Id.*)  Zwick believes he does not fall into this category as he never received an incident report for insolence toward staff or disobeying an order.  As such, he was wrongfully terminated and not treated "in an equal manner . . . as other inmates." (*Id.*, ECF p. 5).  Zwick claims that SOI Altenhofen fired him in retaliation "for exercising his right to use the grievance process." (*Id.*)

On February 6, 2012, Zwick completed an informal administrative remedy request form regarding his loss of employment.  (*Id.*, ECF p. 17).  SOI Altenhofen responded the following day. (*Id.*, ECF p. 18).  SOI Altenhofen recounted that Zwick approached him, complaining that he should have received a warning in December 2011, rather than a pay cut, for doing handstands at work.  Zwick argued this point, as well as when he would be eligible for a pay raise, with SOI Altenhofen.  After a period of time, SOI Altenhofen told him to walk away but Zwick continued to argue.  SOI Altenhofen then ordered Zwick to report to his supervisor. (*Id.*)  Instead, Zwick went to get a copout from the floor clerk. (*Id.*)  When confronted again, Zwick continued to say it was unfair for SOI Altenhofen "to take his grade in December and that the SOI was abusing his power toward him." (*Id.*)  SOI Altenhofen terminated Zwick for disobeying an order and for insolence toward staff. (*Id.*)  "The SOI has authority to remove an inmate who, in the judgment of the

SOI, would constitute a serious threat to the orderly and safe operation of the FPI factory. And in [SOI Altenhofen's] judgment that by Inmate Zwick refusing [an] order and for insolence toward staff constituted these findings." (*Id.*)

On February 22, 2012, Zwick sent a request to staff form to Warden Ebbert and SOI Altenhofen stating he was wrongfully terminated from his prison industries job in the absence of an incident report. (*Id.*, ECF pp. 19-20). On February 24, 2012, Zwick filed a formal administrative remedy concerning his alleged firing by SOI Altenhofen "for wanting to grieve" his present pay grade. (*Id.*, ECF p. 14, No. 677834-F1).

On March 8, 2012, Warden Ebbert denied the administrative remedy stating that Zwick received a pay grade reduction "for doing a Hand Stand in the factory" and that he must wait 90 days to be eligible for a promotion. (*Id.*, ECF p. 16). Warden Ebbert noted that Zwick was warned in his orientation package that "talking back to staff/insolence will result in termination." (*Id.*) He was fired for his insolence toward SOI Altenhofen after he was told to "walk away" and "go back to work." (*Id.*)

Zwick appealed to the Northeast Regional Office alleging he was improperly terminated from his prison job without due process because he did not receive a disciplinary report. (*Id.*, ECF pp. 11-12). Regional Director J. L. Norwood, denied Zwick's appeal at final review. (*Id.*, ECF p. 13). Norwood advised Zwick that his termination complied with Program Statement 5251.06, *Inmate Work Performance Pay Program*, and Program Statement 8120.02*, Work Programs for Inmates, FPI.* (*Id.*) Norwood also reminded Zwick that he was "informed during orientation that talking back to staff constitutes insolence and would result in termination." (*Id.*)

Zwick also claims that Unit Manager Samples, Warden Ebbert and SOI

-6-

Altenhofen threatened him with an institutional transfer "for his continued use of the grievance process."

On July 18, 2012, Zwick filed an informal administrative remedy form alleging that SOI Altenhofen discriminated against him by not placing him on the "FRP priority list" versus the "Prior UNICOR hiring list" for rehiring purposes. (*Id.*, ECF p. 37). SOI Altenhofen advised that Zwick's Unit Team must recommend his placement on the UNICOR FRP priority list. SOI Altenhofen placed Zwick on the list for which he was qualified, the Prior UNICOR waiting list. (*Id.*, ECF p. 39). SOI Altenhofen also told Zwick that because he was previously terminated from UNICOR for not following FPI inmate worker standards and rules, he had "the authority to refuse an FPI assignment to an inmate, who in the judgment of the SOI, could constitute a serious threat to the orderly and safe operation of the FPI Factory. Until in the judgment of the SOI you are able to abide by the standards and rules set forth in the UNICOR orientation handbook, this hiring hold will be rescinded and you will be eligible to be hired at that time." (*Id.*) SOI Altenhofen said he would ask Zwick's Unit Team to evaluate whether he meets the requirements for placement on the UNICOR FRP priority waiting list and that he would be reconsidered for rehiring six months after his firing date. (*Id.*)

On July 29, 2012, Zwick filed Administrative Remedy No. 698914-F2, alleging that SOI Altenhofen abused his discretion and discriminated against him when removing him from his prison industries job. (*Id.*, ECF p. 35). Warden Ebbert responded on August 16, 2012, noting that Zwick was rehired on August 7, 2012. (*Id.*, ECF p. 36). Zwick counters that he was rehired "in an attempt to cover up thier (sic) conspiracy" after he filed an administrative remedy alleging SOI Altenhofen discriminated against him. (*Id.*, ECF p. 6

-7-

and p. 34).

Finally, Zwick complains he was never paid competitive wages for the products he made in his UNICOR job which were being sold to the public in competition with private enterprises. (*Id.*, ECF p. 7). Plaintiff seeks monetary compensation for his emotional distress, back wages, and issuance of an injunction preventing his transfer.

        2.       *Sovereign Immunity Bars Zwick's Suit for*
                  *Monetary Damages against Defendants in their*
                  *Official Capacities*

"The United States, the FBOP, and the individual FBOP employees in their official capacity . . . are barred from suit by the doctrine of sovereign immunity." *Perez-Barron v. United States*, 480 F. App'x 688, 690 (3d Cir. 2012)(nonprecedential); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.") The United States has not consented to be sued for monetary damages based on a constitutional violation or, in other words, for a "*Bivens*-type cause of action directly against a federal agency." *F.D.I.C.*, 510 U.S. at 484, 114 S.Ct. at 1005.

The defendants correctly point out that Zwick fails to specify whether he is suing them in their official and/or personal capacities. (Doc. 30, Def's.' Br. in Supp. Mot. to Dismiss and Mot. for Summ. J., ECF p. 11.) To the extent that Zwick is suing the defendants for monetary damages in their official capacities, his claims are barred.[2] *See*

---

[2] As for Zwick's request for injunctive or declaratory relief from the defendants named in this action, those claims are now moot given his transfer from USP Canaan to another facility. *See Fortes v. Harding*, 19 F. Supp. 2d 323, 326 (M.D. Pa. 1998) ("Fortes' transfer to another institution moots any claims for injunctive or declaratory relief.").

*Webb v. Desan*, 250 F. App'x 468, 471 (3d Cir. 2007)(nonprecedential)(affirming dismissal of prisoner's *Bivens* claim for damages against BOP employees in their official capacities).

### 3. *Failure to Allege the Personal Involvement of CO Hunter and Case Manager Dunstone*

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003)(quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988)).  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which the plaintiff's claims are based.  (*Id.*)  A civil rights complaint must state time, place, and responsible person.  (*Id.*)  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  *Rode*, 845 F.2d at 1207-08; *see Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003).

Although they are named in the caption of the Complaint, Zwick fails to set forth any allegations against either CO Hunter or Case Manager Dunstone.  Because he fails to allege either of these defendants were aware of, condoned, participated in, or acquiesced in the actions of SOI Altenhofen of terminating him from his prison industries job, or any other alleged wrongdoing, these defendants will be dismissed from the Complaint.  Furthermore, because Zwick had the opportunity to oppose defendants' motion to dismiss these defendants but failed to do so, the Court will not allow him to amend his Complaint to now allege their personal involvement in the underlying claim.

    4. *Zwick's Claim that He Was Terminated From His*
      *Prison Job Without Due Process*

Zwick alleges that SOI Altenhofen terminated him from his UNICOR job without due process because he never received a misconduct for insolence toward staff or refusing to obey an order.  However, it is well established that prison inmates do not have a constitutionally protected right to employment while in prison.  *See James v. Quinlan*, 866 F.2d 627, 629-630 (3d Cir. 1989); *Presbury v. Wenerowicz*, 472 F. App'x 100 (3d Cir. 2012)(nonprecedential).  With regard to Zwick's claim that he was denied minimum wage, or a prevailing wage, for his UNICOR work, prisoners who perform intra-prison work are not entitled to minimum wage under the Fair Labor Standards Act.  *See Tourscher v. McCullough*, 184 F.3d 236, 243 (3d Cir. 1999).

  Accordingly, these claims will be dismissed without leave to amend, as any such amendment would be futile.

  B. *Summary Judgment Motion*

    1. *Statement of Undisputed Facts*[3]

   (i) *Events of February 6, 2012*

On February 6, 2012, SOI Altenhofen had a conversation with Zwick concerning his work assignment within the Federal Prison Industries or UNICOR. (Doc. 29, Defs.' Statement of Material Facts (DSMF), ¶1).  SOI Altenhofen memorialized that

---

[3] Because Zwick failed to file a Statement of Material Facts in response to Defendants submission, the facts as set forth in Defendants' statement will be deemed admitted pursuant to M.D. Pa. Local Rule 56.1.  *See also Smith v. Addy*, 343 F. App'x 806, 808 (3d Cir. 2009) (nonprecedential) (relying on Defendants' unopposed statement of facts in resolving summary-judgment motion).

conversation in a memorandum for the record.  (*Id.* ¶3).

> On February 06, 2012, at approximately 10:00 A.M., inmate Zwick approached me about his grade one promotion.  He asked me since he lost his grade 2 in December and I gave it back to him in January if he had to start over on his 90 days for promotion.  I explained to him that the 90 day (sic) for promotion is not a guarantee that you will get promoted in 90 days, and that you asking me for a promotion will not get one either, your supervisor is the one that will put you in for a promotion.  He kept telling me that it was unfair for me to take his grade in December for doing a handstand in the factory.  I explained to him that I could have fired him then for performing an unsafe act in the factory.  He kept telling me I should have given him a warning and that it was unfair for me to take his grade in December.  I told him I was done and for him to walk away and get back to work, he refused and kept saying it was unfair.  I then gave him an order to report to Mr. McIntosh for a reassignment of his duties as a pallet jack operator.  Instead Inmate Zwick went to the floor clerk for a copout, I went to Mr. McIntosh and told him what happened and for him to walk Zwick out for not following an order.  Inmate Zwick started yelling at me saying I was abusing my power and that I should not have taken his grade but instead I should have given him a warning. I fired Inmate Zwick for disobeying an order twice and for insolence toward a staff member.

(*Id.* ¶3; *see also* Doc. 29-1).

### (ii) *The BOP's Administrative Remedy Program & Zwick's Administrative Remedy Filings*

Federal inmates may challenge any aspect of their confinement by using the BOP's three-tiered Administrative Remedy program.  (DSMF ¶ 4).  The first tier of the administrative remedy program is to present the issue to the staff for an informal resolution attempt.  (*Id.* ¶ 5, citing See 28 C.F.R. § 542.13).  If that does not resolve the issue, the inmate must submit a formal request for administrative relief to the Warden.  (*Id.* ¶ 6, citing 28 C.F.R. § 542.14).  An inmate who is not satisfied with the Warden's response may

-11-

submit an appeal to the appropriate Regional Director. (*Id.* ¶ 8, citing 28 C.F.R. § 542.15). The final step in the administrative remedy process is an appeal to the General Counsel (*Id.* ¶ 9, citing 28 C.F.R. § 542.15). No administrative appeal is considered fully exhausted until it has been considered by the General Counsel's Office. (*Id.* ¶ 11).

### (a.)   *Administrative Remedy No. 677834 - Falsely Terminated from UNICOR*

Zwick filed administrative remedy No. 677834-F1 on February 27, 2012, alleging he was falsely terminated from his UNICOR job for complaining about his pay grade, disobeying an order, and insolence without receiving an incident report for these alleged misconducts. (DSMF ¶ 14; *see also* Doc. 1, ECF pp. 10-19). This administrative remedy was fully exhausted on March 19, 2013, when the BOP Central Office denied the appeal. (DSMF ¶ 14).

### (b.)   *Administrative Remedy No. 698914 - SOI Altenhofen Wrongfully Terminated Zwick*

On August 1, 2012, Zwick filed administrative remedy No. 698914 at the institutional level, alleging that SOI Altenhofen manipulated the rules to have him removed, had no proof that he was a threat to the orderly and safe operation of UNICOR, and fired him for "asking for a pay grade." (DSMF ¶ 15; Doc. 1, ECF p. 35). Zwick resubmitted this remedy at the institutional level on August 16, 2012. (DSMF ¶ 16). The same day Warden Ebbert responded "for information purposes only," noting that Zwick had been rehired by UNICOR on August 7, 2012 and advised Plaintiff of the procedures for UNICOR's hiring and waiting lists. (*Id.* ¶17). Zwick did not appeal Warden Ebbert's August 16, 2012, response. On September 5, 2012, Zwick filed his Complaint in this matter. (*Id.* ¶ 19).

(c.)   *Administrative Remedy No. 701711 - Conspiracy*

On August 21, 2012, Zwick submitted administrative remedy No. 701711 at the institutional level alleging that SOI Altenhofen and Unit Manager Sample conspired to have him transferred to another institution because he filed a complaint against SOI Altenhofen.  (DSMF ¶ 20).  Plaintiff resubmitted this remedy at the institutional level on September 6, 2012, and again on September 25, 2012.  (*Id.* ¶ 21).  On September 25, 2012, Warden Ebbert responded that he was submitted for transfer because USP Canaan was undergoing a "mission reorganization."  (*Id.* ¶ 22).  Warden Ebbert also advised that the BOP's Designation & Sentence Computation Center would decide whether Zwick would be transferred.  (*Id.*)  Zwick did not appeal Warden Ebbert's September 25, 2012, response.  (*Id.* ¶ 24).

(d.)   *Administrative Remedy No. 701712 - Transfer*

On August 21, 2012, Zwick filed administrative remedy No. 701712, alleging that he should not be transferred because he had a pending court matter.  (*Id.* ¶ 25).  Zwick resubmitted this remedy at the institutional level on September 6, 2012, and again on September 25, 2012.  (*Id.* ¶ 26).  To date, Zwick has not appealed Warden Ebbert's September 25, 2012 response.  (*Id.* ¶ 28).

(e.)   *Remaining Related Administrative Remedies*

On October 16, 2012, Zwick filed three separate administrative remedies: (1) No. 708788 ("I/M alleges fired from UNICOR for filing Complaint"); (2) No. 708791 ("I/M alleges strip searched/told no talking in UNICOR"); and (3) No. 708792 ("I/M alleges staff

lying about altercation in UNICOR"). On October 22, 2012, Plaintiff filed administrative remedy No. 709354 ("I/M alleges staff discrimination/unequal treatment"). (*See* Doc. 29-1, ECF pp. 25-26). While these administrative remedies appear to relate to Zwick's UNICOR job, they were all initiated after his reinstatement to UNICOR in August 2012, and after September 5, 2012 the date Zwick signed the Complaint. (*Id.* ¶ 17 and 29).

> 2. *Zwick Failed to Exhaust his Administrative Remedies as to All Claims Except for His Claim That He Was Fired from his UNICOR Job in Retaliation for Filing a Grievance Against SOI Altenhofen*

The Prison Litigation Reform Act (PLRA) requires that an inmate exhaust all available administrative remedies before he may maintain a suit in federal court:

> No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility under such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *Small v. Camden Cnty.*, 728 F.3d 265, 268 (3d Cir. 2013). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," including *Bivens* suits by federal prisoners. *Porter v. Nussle*, 543 U.S. 516, 523, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002). Under the PLRA, a prisoner must properly exhaust all available administrative remedies prior to filing suit. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 83-84, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006). That is, "prisoners must complete the administrative review process in accordance with the applicable procedural rules — rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218, 127 S.Ct. 910, 922,

166 L.Ed.2d 798 (2007)(internal citation and quotation marks omitted).  "Proper exhaustion demands compliance with the agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90-91, 126 S.Ct. at 2386;  *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007).  Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim.  *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004).  Further, the PLRA "completely precludes a futility exception to its mandatory exhaustion requirement."  *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000).  The Supreme Court has clearly stated that "there is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 212, 127 S.C. 910, 918-19, 166 L.Ed.2d 798 (2007).

A prisoner is not required to allege that administrative remedies have been exhausted.  *Jones*, 549 U.S. at 216, 127 S.Ct. at 921; *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002).  Failure to exhaust available administrative remedies is an affirmative defense.  (*Id*.)  As such, it must be plead and proven by the Defendants.  *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

In their motion, Defendants present the affirmative defense that they are entitled to judgment as a matter of law with respect to all claims against all defendants, except Zwick's claim that he was fired from his UNICOR job in retaliation for filing a grievance against SOI Altenhofen, due to his failure to exhaust his available administrative remedies as to those claims.  Although Zwick initiated administrative remedies as to other claims related to his dissatisfaction with his UNICOR termination, pay grade, timeliness of re-employment, and transfer to another facility, he did not fully complete the BOP's three tiered administrative remedy process as to these claims.  These facts are unchallenged by

Zwick. As such, Zwick is barred from bringing any claim against any other Defendant, other than his retaliatory firing claim against SOI Altenhofen framed by Administrative Remedy No. 677834. Accordingly, the remaining Defendants are entitled to summary judgment in their favor as to all claims set forth in the Complaint against them.

### 3. *SOI Altenhofen Firing Zwick was Reasonably Related to a Legitimate Penological Interest*

As noted above, Zwick does not have a protected liberty or property interest in his Federal Prison Industries job assignment. *See Quinlan*, 866 F.3d at 630. Thus, he lacks a due process interest in that employment. *Id*. However, "[s]ome government actions, not unconstitutional in and of themselves, may be constitutional torts if motivated in substantial part by a desire to retaliate for the exercise of a constitutional right." *Sims v. Piazza*, 462 F. App'x 228, 233 (3d Cir. 2012)(nonprecedential). Broadly construing Zwick's only exhausted administrative remedy concerning his discharge from UNICOR employment, Zwick claims he was fired to retaliate for his grievance against SOI Altenhofen.[4]

To prevail on a retaliation claim, a prisoner must show that: (1) he engaged in constitutionally protected conduct; (2) he suffered some "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) that his protected conduct was a substantial or motivating factor in the decision to

---

[4] While Zwick does not use the word "retaliation" in Administrative Remedy No. 677834, a claim which must also be exhausted, *see Hoffenberg v. Provost*, 154 F. App'x 307, 311 (3d Cir. 2005) (nonprecedential) (retaliation claim must be presented and exhausted as separate claim from underlying assault claim), the court will construe Zwick's only exhausted administrative remedy broadly and address the merits of any possible retaliation claim as it is without merit in any event.

discipline him.  *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  If a plaintiff establishes a prima facie case of retaliation, the burden then shifts to the prison officials to show by a preponderance of the evidence, that their actions would have been the same, even in the absence of protected activity.  *Id.* at 334 ("Once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.")

   Based on the allegations of the Complaint, Zwick has sufficiently plead the first prong of a retaliation claim by alleging he was engaged in constitutionally protected conduct in the form of filing a cop-out when he was fired.  *See Glenn v. Barua*, 252 F. App'x 493, 499 (3d Cir. 2007)(nonprecedential)("Glenn has arguably engaged in conduct protected by the First Amendment by filing grievances about the medical care he was receiving and by personally complaining to prison officials"); *see also Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981)(filing of a lawsuit is protected activity under the First Amendment right of prisoners to petition the court).  He has also satisfied the second prong.  The loss of his UNICOR employment is an adverse action.  *Sims*, 462 F. App'x at 233 ("the termination of prison employment is a sufficient deterrent to meet the pleading standard of a retaliation claim").

   The final prong requires Zwick to establish the causal link between his constitutionally protected conduct (the filing of a cop-out) and the adverse action (job loss).  The Third Circuit has held that "suggestive temporal proximity" is relevant, but not determinative, to causation in a retaliation case.  *Rauser*, 241 F.3d 334.  The timing must

-17-

be "unusually suggestive" of retaliatory motive before a causal link will be inferred. *Krouse v. American Sterilizer, Co.*, 126 F.3d 494, 503 (3d Cir. 1997). The allegations of Zwick's Complaint also satisfy this prong. Zwick alleges the filing of his grievance and his firing occurred on the same day.

Unfortunately for Zwick, the uncontested summary judgment record includes the declaration of SOI Altenhofen authenticating his February 6, 2012, "Memorandum for Record." The memorandum elaborates that Zwick was not fired because of his desire to file a grievance, but because of his history of disobedience, his more recent insolence, and his failure to obey two direct orders given to him by SOI Altenhofen. *See* Doc. 29, ¶¶ 1-3; and Doc. 29-1, ECF pp. 3-4. Since Zwick has failed to move beyond his pleading, SOI Altenhofen's declaration is sufficient evidence for summary judgment in Altenhofen's favor. It undisputedly establishes that Altenhofen had a penologically legitimate basis for firing Zwick from his UNICOR job.

Accordingly, summary judgment will be entered in SOI Altenhofen's favor on Zwick's claim that he was fired in retaliation for filing a grievance.

An appropriate order follows.

/s/ William W. Caldwell  
William W. Caldwell  
United States District Judge

Date: March 10, 2014